IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SAM EDWARD STEVENSON,

      Petitioner,

v.                                   No. 1:16-cv-01052-STA-egb

GRADY PERRY,

      Respondent.

ORDER DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

In March 2016, Petitioner, Sam Edward Stevenson, a Tennessee state prisoner, filed a *pro se* habeas corpus petition (ECF No. 1) under 28 U.S.C. § 2254 (the "Petition"). For the reasons that follow, the Petition is **DISMISSED**.

## BACKGROUND

### I.    State Proceedings

The following background summary is drawn from the state court record (ECF No. 7), and the decisions in Stevenson's state appeals. *See State v. Brawner*, 2012 WL 1572212, at *1 (Tenn. Crim. App. May 3, 2012), *perm. appeal denied* (Tenn. Sept. 18, 2012); *Stevenson v. State*, 2014 WL 5107049, at *1 (Tenn. Crim. App. Oct. 10, 2014), *perm. appeal denied* (Tenn. Feb. 12, 2015).

On March 1, 2010, a grand jury in Madison County, Tennessee, returned an indictment charging Sam Edward Stevenson, Brian Brawner, and Randy Miller with attempted first degree murder, aggravated assault, especially aggravated kidnapping, and aggravated arson. (ECF No. 7-

1 at 21-25.)  The indictment alleged that the defendants assaulted, kidnapped, and set afire the victim, Freddy Jones.  (*Id.*)

At the joint jury trial, two brothers, who were Jones's neighbors, testified that on the night of November 2, 2009, they saw two black men beat a white man outside of Jones's house and drag him to the rear of the residence.  *Brawner*, 2012 WL 1572212, at *2   "Nineteen-year-old Ashley Scruggs . . . testified that on [that] night . . . she was smoking marijuana and drinking alcohol in the garage apartment" located behind Jones's house.  *Id.* at *3.  She observed Stevenson, Brawner, and Miller dragging Jones into the apartment.  *Id.*  She testified that Miller stated "'I'm gonna burn him . . . I'm gonna set him on fire,'" at which point he "got the alcohol off the table, . . . poured it on" Jones, and "and set him on fire."  *Id.* at *4.  As the victim was screaming and calling for help, all three defendants kicked him and finally "'stomped [the fire] out.'"  *Id.* (alteration in original).  No one was allowed to leave the apartment.  *Id.*

Jones testified that "he was sitting on the front porch of his residence when Defendants Brawner and Stevenson grabbed him off the porch and kicked and beat him.'"  *Id.*  They then carried him to the garage apartment where Miller "came up behind him, threw alcohol over him, and set him on fire."  *Id.*  Stevenson and Brawner then began kicking him "as an attempt to prevent him from putting out the fire."  *Id.*  After being "confined to the apartment for approximately nine hours," he escaped to a neighbor's house, and the police were called.  *Id.* at *5.

Medical personnel testified to the extent of Jones' injuries, and law enforcement officers testified to the events leading up to and following the arrest of the defendants.  *Id.* at *2-3.

The defense called three witnesses.  The victim's daughter testified about her father's relationship with Brawner.  *Id.* at *5.  Brawner testified that, on November 2, 2009, he and the victim "got into a brief scuffle," and that other individuals "grabbed the victim and carried him

toward the garage apartment." *Id.* at *6. "Concerned for the victim's well-being, he walked with Stevenson to the apartment," where they "found the victim on the floor." *Id.* At some point, he saw that the victim was on fire, and he, Stevenson, and Miller attempted to put out the flames. Officer Ted Maxwell testified that the victim named Stevenson and Brawner as his attackers but "never mentioned Miller to him." *Id.* at *7.

The jury acquitted Stevenson of aggravated arson, but found him guilty of aggravated assault, especially aggravated kidnapping, and facilitation of attempted first degree murder. *Id.* at *1; (ECF No. 7-1 at 75-77). The trial court merged the aggravated assault conviction into the facilitation conviction, and sentenced him to fifty-three years of incarceration. *Brawner*, 2012 WL 1572212, at *1. Petitioner took an unsuccessful direct appeal, *id.*, and the Tennessee Supreme Court denied permission to appeal (ECF No. 7-18.)

Petitioner subsequently filed a *pro se* post-conviction petition in the state court. (ECF No. 7-19 at 5-17.) Following an evidentiary hearing (ECF No. 7-21), the post-conviction trial court denied relief in a written decision (ECF No. 7-19 at 52-53). The TCCA affirmed, *Stevenson*, 2014 WL 5107049, at *10, and the Tennessee Supreme Court denied permission to appeal (ECF No. 7-26).

## II.    Federal Habeas Petition

On March 10, 2016, Stevenson submitted his federal habeas Petition to prison officials for mailing (ECF No. 1 at 14), together with a supporting memorandum (ECF No. 1-1). He asserts the following claims:

Claim 1:  The evidence was insufficient to convict Petitioner of:

Claim 1A: especially aggravated kidnapping, and

Claim 1B: facilitation of attempted first degree murder.

Claim 2: Trial counsel was ineffective for withdrawing a motion to sever Petitioner's case from those of his co-defendants.

Claim 3: Trial counsel was ineffective for failing to interview the victim and other potential witnesses prior to trial.

Claim 4: Petitioner's convictions for aggravated assault and facilitation of attempted first degree murder violated the Double Jeopardy Clause pursuant to *Blockburger v. United States*, 284 U.S. 299 (1932).

On July 5, 2016, Respondent filed the state court record (ECF No.7), and a motion to dismiss the Petition as untimely (ECF No. 8). Petitioner responded to the motion, claiming that his late filing was the result of circumstances beyond his control. (ECF No. 14.) On February 8, 2017, the Court denied the motion to dismiss without prejudice and directed Respondent to respond to the Petition. (ECF No. 15.) The State timely filed its Response (ECF No. 21), and Petitioner filed his Reply (ECF No. 22).

## LEGAL STANDARDS

### I.      Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorrisim and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in

light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)) (citation omitted).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 11, 14, 17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014).

## II. Sufficiency of the Evidence

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), provides the federal due process standard for evidentiary sufficiency in criminal cases. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (holding *Jackson* applies to sufficiency-of-the-evidence claims on habeas review under § 2254(d)). In *Jackson*, the Supreme Court announced that "the relevant question" "on review of the sufficiency of the evidence to support a criminal conviction," is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (emphasis in original).

The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Id.* at 319. *See also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) (holding that, under *Jackson*, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.").

The AEDPA adds a layer of deference to *Jackson's* already deferential standard. By virtue of the AEDPA's command that federal habeas relief may issue only if the state court's decision is "contrary to" controlling federal law or "based on an unreasonable application" of the controlling federal law, 28 U.S.C. § 2254(d), a state court determination that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference" by the federal habeas court. *Coleman*, 566 U.S. at 656.

## III. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two

elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim: "Federal habeas courts

must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

## DISCUSSION

Respondent argues that the Petition should be dismissed because Stevenson filed it beyond the limitations period and has not established that he is entitled to equitable tolling or that he has a gateway claim of actual innocence that would overcome the untimely filing. In the alternative, he argues that some of the claims are procedurally defaulted, while the remaining claims are without merit. In his Reply, Stevenson insists that he is entitled to equitable tolling, that he has established a gateway claim of actual innocence, and that he has not defaulted any of his claims. He argues that all of his claims are meritorious.

Upon review of the record and the parties' arguments, the Court determines that the Petition must be dismissed as untimely. The Court also concludes that Stevenson would not be entitled to relief on any of his claims even if the Petition had been timely filed.

## I.    Timeliness

A § 2254 petition is subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the latest of four possible dates:

(A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized

by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The one-year statute of limitations in 28 U.S.C. § 2244(d) is not a jurisdictional bar and is subject to equitable tolling under extraordinary circumstances. *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003). A petitioner seeking equitable tolling must show that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v, Florida*, 560 U.S. 631, 649 (internal quotation marks omitted).

"AEDPA's time bar" is also subject to "the actual-innocence exception," which does not "require[] a showing of diligence." *Davis v. Bradshaw*, 900 F.3d 315, 325 n.6 (6th Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 399-401 (2013)). A claim of actual innocence must be supported with new evidence from which the court could conclude that "'it is more likely than not that no reasonable juror would have convicted'" the petitioner. *McQuiggin*, 569 U.S. at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In this case, § 2244(d)(1)(A) applies, which means that Stevenson had one-year from the date on which his judgment of conviction became final to file his habeas petition. Taking into account statutory tolling under 28 U.S.C. § 2244(d)(2), the last day he could timely file a § 2254 petition was Friday, May 15, 2015.

The date is arrived at as follows. Stevenson appealed his conviction to the Tennessee Supreme Court but did not appeal to the United States Supreme Court. His judgment of conviction thus became final when the time for appealing to the United States Supreme Court expired, which was ninety days after the Tennessee Supreme Court denied permission to appeal. *See Bronaugh*

*v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000). Permission to appeal was denied on September 18, 2012, and ninety days from that date was Monday, December 17, 2012. The limitations period for Stevenson's federal habeas claims began to run the next day, December 18, 2012. *See Bronaugh*, 235 F.3d at 285.

The limitations period ran for 274 days and was then tolled from September 19, 2013, the day Petitioner filed his state post-conviction petition, until February 12, 2015, the day the Tennessee Supreme Court denied permission to appeal. *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection.") When the limitations "clock" resumed ticking the next day, February 13, 2015, 91 days remained in the limitations period. Ninety-one days later was Friday, May 15, 2015. The Petition was not filed until March 10, 2016, which was 300 days beyond the end of the limitations period.

Petitioner does not dispute that he filed the Petition late but contends that he is entitled to equitable tolling. He has submitted a letter from his appellate counsel informing him that she would not file a post-conviction application for permission to appeal ("APA") on his behalf. (ECF No. 14-1 at 10.) He alleges that he filed a *pro se* APA in reliance on counsel's representation. However, counsel did subsequently file an APA, which Petitioner said was done without informing him. The *pro se* APA was later dismissed as duplicative of the APA filed by counsel, and the surviving APA was eventually denied. Petitioner avers that he did not receive notice of the denial, either directly from the Tennessee Supreme Court or his counsel.

Stevenson further alleges that if a notice was mailed to him, prison officials did not deliver it to him. He believes that multiple prison lockdowns in 2015 and in January of 2016 may account for the lack of mail delivery. Petitioner states that he first learned of the denial of his APA from a

prison library assistant "in late February of 2016, via the Lexis Nexis Program on CD Rom after the program [had] been updated." (ECF No. 14-1 at 6.) In support, he has submitted the affidavit of the assistant, who avers that the Lexis CD is updated quarterly and that he discovered the Tennessee Supreme Court's denial of the APA in February of 2016. (ECF No. 14-1 at 21.)

Respondent argues that Petitioner has not shown that he diligently sought to learn of the disposition of his APA. He has filed the affidavit of Donnell Peterson, the prison contract monitor, attesting that the prison was on administrative lockdown five times in 2015, and once in January of 2016. (ECF No. 21-2 at 1.) Three of the lockdowns lasted no more than five days, one lasted seventeen days, and the longest lasted one month. Donnell avers that "[d]uring lockdowns, the mail room staff goes to jail pods to conduct legal mail callouts," and prisoners "are able to both send and receive legal mail." (*Id.*) Respondent has also submitted Petitioner's outgoing mail log for the period October 2, 2014, through January 31, 2017, and his incoming mail log for the period March 17, 2014, through March 13, 2017. (ECF No. 21-1 at 1-2.)

Although "attorney assurances and the realities of incarceration may justifiably delay a petitioner's request for a case status," "petitioners who receive delayed notification of a state court judgment due to clerical or attorney errors may not seek equitable tolling if they 'passively await decision.'" *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011) (quoting *Miller v Collins*, 305 F.3d 491, 496 (6th Cir. 2002)). In *Robinson*, the Sixth Circuit declined to grant equitable tolling to a petitioner who did not attempt to learn of the status of his appeal "for a year and a half." *Id.*

It appears to be undisputed here that Stevenson was not informed by his attorney or the state court that the Tennessee Supreme Court had denied his APA. As Respondent concedes, Petitioner's prison mail logs show that "he did not receive any incoming mail between December

22, 2014, and March 17, 2016." ECF No. 21 at 19.) Nevertheless, the timeline of events shows that, despite his attorney's failure to notify him, Petitioner did not diligently seek to learn the status of his APA.

First, prison mail records and Petitioner's own concessions demonstrate that he knew on December 11, 2014, that his APA was pending before the Tennessee Supreme Court. Stevenson acknowledges that he received a letter on that date from the state appellate court clerk indicating that the State had fifteen days to file an answer to the APA. (ECF No. 14-1 at 4.) He also concedes that he received a letter from the State on December 22, 2014, informing him that it would not file a response to the APA. (*Id.*) The prison mail logs confirm that he received these letters. (ECF No. 21-1 at 2.)

Second, Petitioner knew from experience that the state supreme court could rule on his application in as little as three to four months. He acknowledges in his Petition that the TCCA denied his direct appeal on May 3, 2012, and the Tennessee Supreme Court denied his *pro se* APA on September 18, 2012. (ECF No. 1 at 2.) Despite knowing the relative swiftness with which the state supreme court could act on his APA, Stevenson did not make any inquiries about his application until late February 2016, which was one year after the Tennessee Supreme Court denied the APA and one year and two months after he learned that the State had declined to file an answer to the application. Although the prison mail services were available to him even during lockdowns, mail logs show that he did not write to his attorney or the state court clerk at any time to get a status update on his APA. (*See* ECF No. 21-1 at 1 (showing no outgoing mail of any type in 2015, and none in January and February of 2016).)

Petitioner has also not provided an adequate explanation for not running a Lexis search earlier. The prison library's updating of Lexis on a quarterly basis would still have afforded him

the opportunity to search for the disposition of his APA in the second, third, and fourth quarters of 2015. He alleges that he could not perform the necessary search during those periods because his prison job, coupled with a limited library schedule, allowed him access to the library for only "one or two hours" on Thursday evenings and once-a-month on a prescribed Saturday. (ECF No. 22-1 at 6-7.) Petitioner has not explained, however, why it would take longer than a single visit of one or two hours to search Lexis for the Tennessee Supreme Court's decision on his APA. *See Oberacker v. Noble*, 2018 WL 4620666, at *3 (6th Cir. Sept. 24, 2018) (holding that reasonable jurists would not disagree with district court's ruling that equitable tolling did not apply, where petitioner failed to "learn[] about the status of his appeals . . . by contacting the state court's clerk offices or by conducting legal research").

Because Petitioner has not shown that he diligently sought to learn of the disposition of his APA, he has failed to establish that he is entitled to equitable tolling.

Stevenson also has not established a gateway claim of actual innocence to overcome the limitations period. He has not identified, as he must, new evidence establishing that "it is more likely than not that no reasonable juror would have convicted" him. *McQuiggin,* 569 U.S. at 399 (internal quotation marks omitted).

For these reasons, the Petition is **DISMISSED** as untimely.

## II.    Claim 1

In Claim 1A, Petitioner asserts that the evidence was insufficient to convict him of especially aggravated kidnapping for three reasons: the State failed to prove that he knowingly and unlawfully confined the victim so as to substantially interfere with his liberty, the state court ignored the testimony of co-defendant Brawner, and the only evidence linking him to the crime was the uncorroborated statement of co-defendant Randy Miller. (ECF No. 1-1 at 20-22.) In

Claim 1B, he asserts that the evidence was insufficient to convict him of facilitation of attempted first degree murder.  (*Id.*)

### A.  Claim 1A

Claim 1A is procedurally defaulted.  Although Petitioner argued on direct appeal that the evidence was insufficient to support his especially aggravated kidnapping conviction, he did not do so on the bases asserted in Claim 1A.  Instead, he argued that the evidence was insufficient to convict him because the State failed to prove the element of "serious bodily injury."  (ECF No. 7-13 at 30-31.)  The time for raising Claim 1A to the state courts has passed.

Petitioner insists that the claim is not procedurally defaulted.  He argues that the "Court is not required to address whether portions of [his]" evidence-sufficiency "claim [are] procedurally default[ed], but [must] determine whether a claim in its entirety is procedurally defaulted . . . ." (ECF No. 22-1 at 9.)  The Court understands Stevenson to be arguing that it is enough for exhaustion purposes that he raised an evidence-sufficiency argument on direct appeal, regardless of the theory he now advances on federal habeas review.  The argument is without merit.  To meet the AEDPA's exhaustion requirement, and thereby avoid a procedural default, a § 2254 "petitioner must present to the federal court 'the same claim under the same theory' that he presented to the state courts."  *Clark v. Steward*, 2015 WL 5706981, at *19 (W.D. Tenn. Sept. 28, 2015) (quoting *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009)).

Although Petitioner maintains that the claim is not procedurally defaulted, he also argues that the default is excused under *Martinez*, 566 U.S. at 17.  (ECF No. 1-1 at 4-6.)  *Martinez*, is inapplicable, however, because Claim 1A is not a procedurally defaulted claim of attorney ineffective assistance.  *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015) (noting that *Martinez* applies to excuse the procedural default only of "claims of ineffective assistance of

trial counsel"). In addition, Petitioner has not established a fundamental miscarriage of justice that would overcome the procedural default, as he has failed to identify new reliable evidence of his actual innocence.

Accordingly, even if Claim 1A had been timely filed, it would be subject to dismissal because it is procedurally defaulted.

**B. Claim 1B**

In Claim 1B, Petitioner asserts that the evidence was insufficient to convict him of facilitation of attempted first degree murder because Ashley Scruggs testified that she never heard Petitioner have a conversation with anyone about setting the victim on fire and that she saw Petitioner attempt to extinguish the flames with his feet. (ECF No. 1-1 at 20-21.) The claim is properly before the Court because Petitioner raised it on direct appeal under the same theory he advances here. (*See* ECF No. 7-13 at 28.) Stevenson is not entitled to relief on the claim, however, because the TCCA was not unreasonable in rejecting it.

Tennessee law defines first degree murder as the "'premeditated and intentional killing of another.'" *Brawner*, 2012 WL 1572212, at *11 (quoting Tenn. Code Ann. § 39–13–202(a)(1)). An individual "commits criminal attempt who, acting with the kind of culpability otherwise required for the offense: '[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offenses.'" *Id.* (quoting Tenn. Code Ann. § 39–12–101(a)(3)) (alteration in original). "[A] person facilitates a felony 'if knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39–11–402(2), the person knowingly furnishes

substantial assistance in the commission of the felony.'" *Id.* (quoting Tenn. Code Ann. § 39–11–403(a)).

In addressing Stevenson's argument that the evidence was insufficient to convict him of facilitation of attempted first degree murder, the TCCA first noted that its "task" on an evidence-sufficiency challenge "is to consider 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at *7 (quoting *Jackson,* 443 U.S. at 319). Applying that standard to the facts in Stevenson's case, the TCCA determined "that the evidence, when viewed in the light most favorable to the State, was more than sufficient to sustain" his facilitation conviction:

> As previously discussed, the State's proof established that Defendants Brawner and Stevenson grabbed the victim from the front porch of the main residence and, after administering a severe beating, delivered him to the garage apartment. All three defendants then dragged or carried the victim inside. Once inside, Brawner shut and locked the door, preventing the victim from leaving. As the beaten victim lay on the floor, Defendant Miller announced his intention of burning the victim, looked around the room for the rubbing alcohol, grabbed the bottle of alcohol, poured it over the victim, and then lit him on fire. Brawner and Stevenson then joined Miller in kicking at the burning victim. From all this evidence, a rational jury could have reasonably concluded that Brawner and Stevenson knew of Miller's intent to kill the victim and, although not sharing in that intent, facilitated him in his attempt to do so by delivering the victim to the garage apartment and preventing his escape.

*Id.* at *11.

Because the appellate court correctly identified the evidence-sufficiency standard set forth in *Jackson* and applied it to the facts of Petitioner's case, its determination that the evidence was sufficient to support the conviction is not "contrary to" controlling Supreme Court. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from

[Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The TCCA's evidence-sufficiency determination is also not based on unreasonable factual determinations. The record shows that Stevenson and Brawner beat the victim and dragged him to the garage apartment (ECF No. 7-6 at 19-20), where Miller announced in Petitioner's presence that he intended to set the victim on fire (*id.* at 20). After Miller carried out his intention, Petitioner began kicking the victim. (*Id.* at 21-22). Although Ashley Scruggs testified that Petitioner kicked Jones in order to extinguish the flames (*id.* at 55), Jones testified that Stevenson kicked him "while [he] was on fire and would not let [him] put [him]self out" (*id.* at 143). (*See also id.* at 111 ("I was rolling over trying to put myself out, and Sam [Stevenson] and . . . Killer Bee was kicking me both at the same time when I was trying to put myself out."). The TCCA refused to disturb the jury's implicit decision to credit the victim's testimony over that of Scruggs. *See Jackson*, 443 U.S. at 319 (holding a reviewing court should "give[] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony"). The state court's factual determinations, including its credibility decision, are presumed correct absent clear and convincing contrary evidence, *see* 28 U.S.C. § 2254(e), which Petitioner has not identified.

Based on the facts adduced, the appellate court's conclusion that a rational juror could find beyond a reasonable doubt that Stevenson knew that Miller intended to kill Jones and that he assisted him in his attempt is patently reasonable.

Because the TCCA's rejection of Petitioner's evidence-sufficiency challenge to his facilitation conviction was not contrary to *Jackson*'s standards, based on unreasonable factual determinations, or the result of an unreasonable application of those standards to the facts, Claim 1B is without merit.

## III.   Claim 2

Petitioner asserts that his trial attorney rendered ineffective assistance by withdrawing his motion to sever his case from his co-defendants' case. He raised the issue on appeal from the denial of post-conviction relief, *see Stevenson*, 2014 WL 5107049, at *8, and now contends that the TCCA's rejection of the claim does not survive AEDPA review. The argument is rejected.

In holding that Petitioner did not receive ineffective assistance, the TCCA credited counsel's explanation "that he withdrew the motion [to sever] after 'thoroughly' discussing with the petitioner reasons it might be advantageous to go to trial with the co-defendants, including that Brian Brawner's testimony could be helpful, even exculpatory, and Randy Miller appeared more culpable than the petitioner." *Id.* at *10. The court found that counsel's "thought-out rationale for withdrawing the motion . . . show[ed] that the decision was not uninformed or based on inadequate preparation." *Id.* The court concluded that Petitioner had therefore "failed to show that counsel rendered deficient performance." *Id.* It did not reach *Strickland*'s prejudice prong.

Because the appellate court correctly identified *Strickland*'s deficient performance test and applied it to the facts of Petitioner's case, its determination that counsel was not ineffective is not "contrary to" controlling Supreme Court. *See Williams*, 529 U.S. at 406; *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The decision is also not based on unreasonable factual determinations. Counsel testified at the post-conviction hearing that he filed the motion to sever "as sort of a knee-jerk reaction," but later withdrew the motion for "multiple reasons" with his client's consent. (ECF No. 7-21 at 7, 10-11.) He learned that Petitioner "had a pretty lengthy

19

criminal history," which would subject him to damaging cross-examination by the State. (*Id.* at 8.) He "talk[ed] to [Brawner's] counsel" and learned that Brawner "didn't have that kind of baggage and" "could tell Mr. Stevenson's version of the events without Mr. Stevenson having to get on the stand and testify." (*Id.*) He also reviewed "[t]he proof [which] showed that [Miller was] the one that actually splashed the alcohol on Mr. Jones and set him afire." (*Id.* at 9.) Counsel reasoned that "perhaps the jury would [therefore] look at the relative involvement of Mr. Stevenson and Mr. Miller and perhaps that might be productive for Mr. Stevenson." (*Id.* at 9.) Finally, he learned from the State that it did not plan to admit Miller's statement into evidence, "which was the only thing from either Co-Defendant that implicated Mr. Stevenson." (*Id.* at 11.)

Petitioner testified that he told his attorney that he wanted the case severed, but that counsel reported to him at the start of trial that he "forgot to" pursue the motion. (*Id.* at 51.) According to Stevenson, counsel told him that it was "all right[,] . . . the more [defendants] the merrier." (*Id.*)

In its written decision, the post-conviction trial court implicitly credited counsel's testimony. (ECF No. 7-19 at 52.) On appeal, the TCCA refused to disturb that credibility determination. *Stevenson*, 2014 WL 5107049, at *10. Petitioner has not pointed to any clear and convincing evidence to undermine counsel's testimony or the credibility determination. The appellate court's findings are therefore not unreasonable. *See generally Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

Finally, the TCCA's ruling that counsel did not render ineffective assistance because his performance was not deficient is not an unreasonable application of *Strickland*'s standards to the facts. As *Strickland* makes clear, an attorney's "strategic choices . . . are virtually unchallengeable"

if based on a "thorough investigation of law and facts relevant to plausible options." *Id.* at 690. The record supports the TCCA's conclusion that counsel made a strategic decision in withdrawing the motion to sever after a thorough investigation into the facts of the case, the defendants' respective criminal backgrounds, and the contents of Brawner's expected testimony.

Accordingly, Claim 2 is without merit.

## IV.  Claim 3

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to interview the victim and other potential witnesses. The TCCA denied the claim, *see Stevenson*, 2014 WL 5107049, at *10, and Petitioner now asserts that the decision was unreasonable.

In rejecting the claim, the state appellate court bypassed *Strickland*'s first prong and held that Stevenson had failed to establish that he was prejudiced by counsel's alleged deficient performance:

> With regard to the petitioner's assertion that he received ineffective assistance of counsel because counsel failed to interview the victim or other possible witnesses before trial, the petitioner failed to present the testimony of such witnesses at the evidentiary hearing and failed to present any evidence of how a pretrial interview of the victim would have aided his defense. In order to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial or sentencing, a petitioner must generally elicit favorable testimony from those witnesses at the evidentiary hearing, as a post-conviction court may not speculate "on the question of ... what a witness's testimony might have been if introduced" at trial. *Black v. State,* 794 S.W.2d 752, 757 (Tenn. Crim. App.1990). As such, the petitioner cannot meet his burden of demonstrating prejudice.

*Id.*

The decision is not contrary to controlling Supreme Court law because the TCCA applied *Strickland*'s prejudice test to the facts of the case. *See Williams*, 529 U.S. at 406; *see also Strickland*, 466 U.S. at 697 ("[A] a court need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

The decision is also not based on an unreasonable determination of the facts. The TCCA's conclusion that Petitioner did not present any proof that the testimonies of potential witnesses and an interview with the victim would have helped the defense "is itself a finding of fact, which is presumed to be correct under the AEDPA absent clear and convincing evidence to the contrary." *Kestner v. Lafler*, 2011 WL 8004777, at *17 (W.D. Mich. Dec. 29, 2011) (citing 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546 (1981)), *report and recommendation adopted*, 2012 WL 2120000 (W.D. Mich. June 11, 2012). Petitioner has not identified any clear and convincing contrary evidence. This Court's independent review of the post-conviction hearing transcript confirms that no evidence was submitted regarding how a pretrial interview with the victim would have been helpful to the defense and no potential witnesses were called to establish the materiality of their testimonies.

Finally, the TCCA's conclusion that counsel was not ineffective is not an unreasonable application of *Strickland*'s principles to the facts. *See e.g. Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio 2009) (holding that petitioner's failure to present evidence that a witness's "testimony would have benefitted" him was "fatal to any attempt to establish that 'but for counsel's alleged deficiencies,' the results of the proceedings would have been different"), *aff'd*, 699 F.3d 908 (6th Cir. 2012).

Accordingly, Petitioner has not shown that the TCCA's decision fails AEDPA review. Claim 3 is therefore without merit.

**V.     Claim 4**

Petitioner asserts that his convictions for aggravated assault and facilitation of attempted first degree murder violate the Double Jeopardy Clause pursuant to *Blockburger*, 284 U.S. at 304. (ECF No. 1 at 10; ECF No. 1-1 at 32-36.) He argues that the State should have been required "to elect which offense[:] facilitation of criminal attempt to commit first degree premeditated murder . . . or aggravated assault . . . ." (ECF No. 1-1 at 34.) Respondent maintains that the claim is procedurally defaulted and that the default is unexcused. The Court agrees.

In his direct appeal, Stevenson argued that his conviction for aggravated assault violated the prohibition against double jeopardy because "there were numerous and separate factual occurrences upon which the jury could have convicted the Defendant of aggravated assault." (ECF No. 7-13 at 32.) He therefore insisted that "the State should have been required to make a factual election with regard to the aggravated assault charge." (*Id.* at 33.) Petitioner did not argue, as he does now, that his convictions for aggravated assault and facilitation of attempted first degree murder violate the Double Jeopardy Clause.[1] Because the time for presenting that argument to the state courts has passed, Claim 3 is procedurally defaulted.

The default is unexcused. As noted earlier, Petitioner cannot rely on *Martinez* to excuse the procedural default of a claim that does not challenge the effectiveness of trial counsel, and he has not identified any new reliable evidence of his actual innocence.

Accordingly, even if Claim 4 were timely, it would nevertheless be subject to dismissal because it is procedurally defaulted.

For all these reasons, the Petition is **DISMISSED**.

---

[1] As Respondent points out, Petitioner may have conflated the double jeopardy argument he raised on direct appeal with one of the arguments raised by Miller. *See Brawner*, 2012 WL 1572212, at *13.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484).

 In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reasons it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.[2]

      **IT IS SO ORDERED**.

                        **s/ S. Thomas Anderson**
                        S. THOMAS ANDERSON
                        CHIEF UNITED STATES DISTRICT JUDGE

                        Date: November 27, 2018.

---

[2]  If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.